UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ashley Wells and
Stephanie Mostowski,

Civil No. 11-1572 (DWF/SER)

Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

Envoy Medical, Inc.,

Defendant.

---

Thomas J. Conley, Esq. Law Office of Thomas J. Conley, counsel for Plaintiffs.

Jessica L. Nelson, Esq., and Thomas P. Kane, Esq., Hinshaw & Culbertson LLP, counsel for Defendant.

---

**INTRODUCTION**

This matter is before the Court on a Motion to Enforce Settlement Agreement (Doc. No. 36) brought by Plaintiffs Ashley Wells ("Wells") and Stephanie Mostowski ("Mostowski") (together, "Plaintiffs"); and a Motion for Summary Judgment (Doc. No. 39) brought by Defendant Envoy Medical, Inc. ("Envoy"). For the reasons set forth below, the Court grants Plaintiffs' motion and denies Defendant's motion as moot.

**BACKGROUND**

Plaintiffs brought this action against Envoy alleging sexual harassment, sexual discrimination, and reprisal under the Minnesota Human Rights Act ("MHRA"), and a cause of action under the Minnesota Whistleblower Statute. (Doc. No. 1, Compl.) On

February 9, 2012, three weeks before the close of discovery and four days before Plaintiffs' scheduled depositions of two key Envoy employees, counsel for Envoy solicited a settlement proposal from Plaintiffs. (Doc. No. 47, Conley Decl. ¶ 2.) On that same day, Plaintiffs provided a written proposal via e-mail that included specific monetary amounts for Plaintiffs, provisions regarding the timing of payments, and other proposed terms, such as mutual releases, non-disparagement agreements, and a stipulation of dismissal with prejudice. (*Id*. ¶ 2, Ex. 1.)[1] In the same e-mail, counsel for Plaintiffs stated: "Please confirm that this is acceptable so that my clients can cancel their flights, and then provide us with the appropriate settlement documentation." (*Id*.) Counsel for Plaintiffs claims that outside counsel for Envoy, James Gasperini, verbally agreed to the written proposal, and that on February 13, 2012, counsel for Plaintiffs forwarded a settlement agreement to Gasperini based on his verbal agreement. (*Id*. ¶¶ 2-3, Ex. 2.)

On February 15, 2012, Gasperini indicated that he "made just a few minor revisions" and asked counsel for Plaintiffs to "review and confirm this is acceptable." (*Id*. ¶ 4, Ex. 3.) On the same day, counsel for Plaintiffs confirmed that the revisions were acceptable and provided a tax identification number. (*Id*. ¶ 5, Ex. 4.) On February 16, 2012, counsel for Plaintiffs forwarded Plaintiffs' signatures on the settlement agreement with Envoy's revisions to Gasperini. (*Id*. ¶ 6, Ex. 5.) Gasperini responded "Thanks. We have forwarded the document over to Envoy." (*Id*. ¶ 6, Ex. 6.)

---

[1] In particular, Plaintiffs offered to resolve their claims for $320,000: $120,000 to Wells, $100,000 to Mostowski, and $100,000 to Plaintiffs' attorney. (*Id*. ¶ 2, Ex. 1.)

On February 21, 2012, Gasperini forwarded a revised settlement agreement to Plaintiffs' counsel, wherein the only changes were to the timing of the payments to be made. (*Id.* ¶ 7, Ex. 7.) Gasperini stated, "Attached is the revised agreement. As soon as I get your [counsel for Plaintiffs] approval, I will send it over to [Envoy's CEO] for signature." (*Id.*) Plaintiffs provided their approval via e-mail later that day. (*Id.* ¶ 8, Ex. 8.) The settlement agreement provided that Envoy would pay Plaintiffs the total sum of $320,000 in two separate payments, the first being due by February 29, 2012. (*Id.* ¶ 7, Ex. 7.) On February 27, 2012, counsel for Plaintiffs asked if Envoy's CEO had signed the settlement agreement and whether the deposits to Plaintiffs were in process. (Doc. No. 68, Wallenfelt Aff. ¶ 7, Ex. A.)

On February 29, Envoy electronically deposited $55,000 (less withholding) in Wells' bank account, and $50,000 (less withholding) in Mostowski's bank account. (Conley Decl. ¶ 9.) Later that same day, Envoy reversed the deposits and withdrew the same amounts from each Plaintiff's account. (*Id.*) Plaintiffs' counsel advised Envoy's counsel of the withdrawals on March 2, 2012. (*Id.* ¶ 9, Ex. 10.)

Apparently, and unbeknownst to Plaintiffs, Envoy's Director of Legal Affairs, Brian Wallenfelt, was unaware that Envoy had not tendered Plaintiffs' claim to its insurance provider. (Wallenfelt Aff. ¶ 4.)[2] According to Envoy, "during the week following February 17," Envoy's Controller asked Wallenfelt to seek approval of the "settlement offer" from Envoy's insurer, and on February 24, 2012, Envoy tendered

---

[2] Wallenfelt took over the responsibilities as Director of Legal Affairs of Envoy in June 2011. (Wallenfelt Aff. ¶ 3.) As of June 2012, Wallenfelt was a law student at William Mitchell College of Law. (*Id.* ¶ 2.)

3

notice of this lawsuit to its insurance provider.  (*Id.* ¶¶ 3, 5.)  Wallenfelt asked Envoy's accounting department "to prepare to make the payments specified" by the February 21 settlement agreement.  (*Id.* ¶ 6.)  Wallenfelt states that he had Envoy's accounting department process the payments "in the event" that Envoy accepted the settlement offer.  (*Id.* ¶ 9.)  On or around February 27, 2012, Wallenfelt discussed the settlement with a representative of Envoy's insurance provider and learned that the insurer would not be able to make a decision to accept or reject the settlement by February 29, 2012.  (*Id.*)  Upon learning this, Wallenfelt directed the accounting departing to "remove" the payments made to Plaintiffs.  (*Id.* ¶ 9.)

In early March 2012, Wallenfelt proposed that the parties enter into a "Settlement Option" in order to give Envoy more time to negotiate with its insurance provider.  (*Id.* ¶ 10 ("I proposed that the Plaintiffs keep their settlement offer open so that [Envoy's insurance provider] could evaluate the case and determine whether it would approve the Plaintiffs' settlement offer."); Conley Decl. ¶ 10, Ex. 11.)  Counsel for Plaintiffs declares that both Wallenfelt and Gasperini assured him several times that Envoy intended to comply with the terms of the February 21, 2012 settlement agreement.  (Conley Decl. ¶ 10.)  Wallenfelt denies making this assurance.  (Doc. No. 73, Second Wallenfelt Aff. ¶ 2.)[3]  Gasperini, however, does not offer an affidavit in support of Envoy's opposition to the motion to enforce.

---

[3]     The Court grants Envoy's Motion for Leave to Consider Second Affidavit of Brian Wallenfelt in Opposition to Motion to Enforce (Doc. No. 72).

Plaintiffs agreed to Envoy's proposed Settlement Option, but asked that Envoy remove a paragraph from the proposed agreement because of the concern that it could be read to invalidate the February 21 settlement agreement. (*Id.* ¶ 11.) The contested language read:

> **Entire Agreement:** This Settlement Option contains the entire agreement between the parties and supersedes any prior written, oral, or implied agreement that is inconsistent with its terms. This Settlement Option shall be governed by and construed in accordance with the substantive laws of the State of Minnesota.

(*Id.* ¶ 11, Ex. 11 at ¶ 6.) Envoy agreed to remove the language. (*Id.* ¶ 11, Ex. 12.) Envoy claims that Wallenfelt refused a request by Plaintiffs' counsel to provide a written representation that Envoy agreed to the terms of the February 21 settlement agreement. (Wallenfelt Aff. ¶ 13.)

The Settlement Option provided that Envoy would pay each Plaintiff and their counsel $5,000 to keep the Settlement Offer open until May 1, 2012, and states in relevant part:

> Plaintiffs offered to settle the Lawsuit per the terms of the attached CONFIDENTIAL SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "Settlement Offer"); and . . .
>
> Envoy has not accepted the Settlement Offer.
>
> **Now, therefore,** Plaintiffs and Envoy agree as follows:
>
> 1. **Payment:** In consideration of the covenants and promises herein, Envoy will pay to Plaintiffs and their counsel within three days of execution of this Option the total sum of Fifteen Thousand dollars ($15,000) to keep the Settlement Offer open until May 1, 2012. Payment will be made as follows:
>
>    a.  $5,000 to Ashley Wells.

      b. $5,000 to Stephanie Mostowski.

      c. $5,000 to the Law Office of Thomas J. Conley . . .

2. **Interest:** If the Settlement Offer is accepted, Envoy will make the payments due per the terms of the Settlement Offer with interest . . .

3. **Option to Accept Settlement Offer:** In consideration of the payment of the amounts set out in paragraph 1, Plaintiffs will keep the Settlement Offer open for Envoy until midnight Minneapolis time on May 1, 2012.

(Conley Decl. ¶ 11, Ex. 12.) There is no dispute that Envoy sent $5,000 each to Wells, Mostowski, and Plaintiff's attorney. (Wallenfelt Aff. ¶ 16.) Ultimately, Envoy did not exercise its Settlement Option. Nor did Envoy abide by the terms of the February 21 settlement agreement. Plaintiffs now bring a motion to enforce the February 21 settlement agreement.

## DISCUSSION

Settlement of lawsuits without litigation is highly favored, and such settlements will not be set aside lightly. *Johnson v. St. Paul Ins. Cos.*, 305 N.W.2d 571, 573 (Minn. 1981) (considering a motion to vacate settlement agreement). If a settlement unravels before the original suit is dismissed, a party who seeks to keep the settlement may file a motion for enforcement because a district court possesses the inherent or equitable power to enforce an agreement to settle a case pending before it. *Simmons, Inc., v. Koronis Parts, Inc.*, Civ. No. 00-1984, 2002 WL 1347401, at *2 (D. Minn. Jun. 18, 2002). Before enforcing a settlement, the court must first conclude that an agreement was reached on all material terms. *Id*.

Under Minnesota law, it is well established that settlement agreements are governed by principles of contract law. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). "[A] full and enforceable settlement requires offer and acceptance so as to constitute a meeting of minds on the essential terms of the agreement." *Id.* "[W]here the offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, the acceptance of which will complete the contract. *Short v. Sun Newspapers, Inc.*, 300 N.W.2d 781, 786 (Minn. 1980) (citation omitted). Here, the parties dispute whether they agreed to settle this case pursuant to the terms of the February 21 settlement agreement. After a careful review of the record before the Court, and for the reasons discussed below, the Court concludes that the parties entered into an agreement to settle this matter pursuant to the terms of the February 21 agreement.

On February 9, 2012, pursuant to Envoy's request, Plaintiffs proposed the basic terms of a settlement agreement via e-mail. Based on the alleged verbal agreement of Envoy's counsel to these basic terms, Plaintiffs drafted a proposed settlement agreement. On February 15, 2012, counsel for Envoy reviewed the first draft proposal, returned a new draft "with just a few minor revisions," and asked counsel for Plaintiffs to "review and confirm" that the revisions were acceptable. Counsel for Plaintiffs did confirm that the revisions were acceptable and sent Plaintiffs' signature pages to Envoy's counsel. Instead of signing the settlement agreement, on February 21, Envoy again revised the settlement agreement, making changes only to the timing of payments to be made to Plaintiffs but to no other material terms. Envoy forwarded a revised settlement agreement to Plaintiffs and stated, "Attached is the revised agreement. As soon as I get

your approval, I will send it over to [Envoy] for signature." (Conley Decl. ¶ 7, Ex. 7.) Plaintiffs responded that same day, indicating that the changes were acceptable. Based on this record and the content of the February 21 agreement (as revised by Envoy), the Court concludes that the February 21 settlement agreement is clear, definite, and contains all of the relevant terms of the parties' agreement. As such, the Court concludes that the February 21 settlement agreement constitutes an offer. The Court also finds that the offer was promptly accepted by Plaintiffs when counsel indicated the changes were acceptable.[4]

In addition, Envoy's own actions indicate that it agreed to the terms of the February 21 settlement agreement. In particular, Envoy cancelled the scheduled depositions of Envoy employees, added the settlement payments to its payroll, and

---

[4] Envoy argues that the settlement agreement was not enforceable because it was not signed. The Court disagrees. Minnesota law does not require a writing to give rise to a binding settlement agreement. *See, e.g.*, *Shell v. Amalgamated Cotton Garment*, 871 F. Supp. 1173, 1181 n.16 (D. Minn. 1994) (explaining that Minnesota law does not require a writing in order for there to be offer and acceptance sufficient to give rise to a binding settlement agreement); *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 437 (Minn. App. 1985) (explaining that conduct, as well as verbal expression, may constitute acceptance and holding that settlement was valid even though plaintiff never executed settlement agreement).

Envoy also argues that Gasperini did not have the authority to agree to the terms of the February 21 settlement agreement. *See, e.g.*, *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996) (holding that a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry). An attorney may, however, settle a claim with authorization of the client. *Rosenberg*, 376 N.W.2d at 437. Here, the record does not provide affirmative proof that Gasperini was not authorized to accept the offer on February 21. As mentioned earlier, Gasperini did not offer an affidavit in support of Envoy's opposition, and the affidavit of Envoy's CEO does not discuss the extent of Gasperini's authority. Moreover, as discussed above, Envoy's actions indicate that it agreed to the terms of the agreement.

deposited (albeit temporarily) the settlement funds into Plaintiffs' accounts. Intent to contract is based upon the objective and outward manifestations of assent and not upon a party's subjective intent. *See TNT Props., Ltd. v. Tri-Star Developers LLC.,* 677 N.W.2d 94, 102 (Minn. Ct. App. 2004). Envoy's actions, and indeed partial performance of its obligations under the February 21 agreement, is compelling evidence that Envoy intended to enter into the agreement. *See, e.g., Sound Check v. Am. Fed'n of TV and Radio* Artists, 204 F.3d 801, 804 (8th Cir. 2000) ("Performance is evidence that a party intended to enter into a contract.").[5] For all of the above reasons, the Court concludes that the parties had a meeting of the minds on the essential terms of the settlement and that Envoy entered into a binding agreement to settle this action pursuant to the terms of the February 21 agreement.

Envoy argues the fact that the parties later entered into the Settlement Option demonstrates that the parties did not enter into the settlement agreement. In particular, Envoy points to the language of the Settlement Option which states that "Envoy has not accepted the Settlement Offer." The Court concludes that the existence of the Settlement Option, which post-dates the February 21 settlement agreement and does not contain an integration clause, does not negate the enforceability of the February 21 agreement. The objective formation of the February 21 settlement agreement is not undone by the

---

[5] In addition, Plaintiffs withdrew a pending motion to compel before Magistrate Judge Steven E. Rau. (Doc. No. 41 at 2.) Envoy later moved to extend the deadlines for discovery. Magistrate Judge Rau denied the motion, explaining that "Envoy's dilatory revelation regarding insurance coverage does not persuade this Court that good cause exists to afford them additional time to engage in discovery that they have dawdled with for the past six months." (*Id.* at 5.)

inconsistent recitals in the Settlement Option.  Instead, the February 21 settlement agreement became binding in its own right prior to the execution of the Settlement Option.  Thus, despite the fact that the Settlement Option purports to declare that "Envoy has not accepted the Settlement Offer," the record demonstrates the opposite.

The record also offers a likely explanation for why the parties would attempt to enter into the seemingly incongruous—and questionable— Settlement Option.  At the time or shortly after Envoy agreed to settle this case, Envoy discovered (due to its own lack of diligence) that it had failed to tender this lawsuit to its insurance provider.  After making the belated discovery, Envoy tendered the lawsuit, only to be told that the insurer could not make a decision prior to the date that Envoy's first payment was due to Plaintiffs.  The record indicates that Envoy wanted to continue to negotiate coverage with its insurance provider, and proposed the Settlement Option as a vehicle to do so.  Despite the language in the Settlement Option, the record does not, however, demonstrate that Plaintiffs ever intended to allow Envoy to back out of its obligations under the February 21 settlement agreement.  Indeed, there is evidence that Plaintiffs relied on Envoy's assurances that Envoy would respect the terms of the February 21 settlement agreement.[6]  Envoy also acted as though it had a binding agreement by arranging for and

---

[6]  Counsel for Plaintiffs submits in his declaration that both Envoy's outside counsel and Wallenfelt assured him on several occasions that Envoy intended to comply with the terms of the February 21 settlement agreement.  (Conley Decl. ¶ 10.)  Wallenfelt disputes this in his own affidavit.  (Second Wallenfelt Aff. ¶ 2.)  Envoy's outside counsel, Gasperini, however, does not offer an affidavit in support of Envoy's opposition to the motion to enforce.  Therefore, there is no factual issue and the Court accepts that Envoy's outside counsel did, indeed, represent that Envoy would comply with the terms of the February 21 settlement agreement.

depositing the first payments into Plaintiffs' respective accounts, and both parties behaved as if they had reached an agreement by cancelling scheduled depositions on the eve of the discovery deadline and otherwise allowing the deadline to lapse. Envoy reversed course and withdrew the initial payments *after* it discovered that its claim had not been tendered and it is clear that Envoy did so to buy time to negotiate coverage of the settlement with its insurance provider. Most likely in an effort to avoid the need to bring the present motion, Plaintiffs agreed to allow Envoy to delay its payment to Plaintiffs to see if its insurer would cover the settlement. But the record does not demonstrate that Plaintiffs ever agreed that they would not get paid if insurance coverage was denied. Although the execution of the Settlement Option certainly complicated matters, it simply does not operate to invalidate the binding February 21 settlement agreement.[7]

Finally, the Court notes that even if the Court was persuaded by Envoy's argument that the parties did not enter into a binding settlement agreement on February 21, Envoy would be bound by its terms under the principles of equitable estoppel. *See Rosenberg*, 376 N.W.2d at 437-38 (party estopped from denying existence of a settlement agreement). The Court would, under its equitable powers, estop Envoy from reneging on its promise to settle this case pursuant to the terms of the February 21 settlement

---

[7] The fact that Envoy felt the need to enter into the Settlement Option at all underscores the fact that Envoy felt bound by the February 21 settlement agreement. If Envoy did not believe it was bound by the settlement agreement, it could have simply negotiated with its insurer while the case proceeded.

agreement. To allow otherwise would cause harm to Plaintiffs after they reasonably relied on Envoy's promise to settle this action.[8]

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Enforce Settlement Agreement (Doc. No. [36]) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Doc. No. [39]) is **DENIED AS MOOT**.

3. Envoy's Motion for Leave to Consider Second Affidavit of Brian Wallenfelt in Opposition to Motion to Enforce (Doc. No. [72]) is **GRANTED**.

Dated: September 12, 2012  s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

---

[8] Because the Court concludes that the February 21 settlement agreement is enforceable, Envoy's motion for summary judgment is moot.